KOHLMEYER v. WOLVERINE OIL CO. *et al.*

No. 2761. Opinion Filed May 20, 1913.

(132 Pac. 497.)

INDIANS—Indian Lands—Jurisdiction—State and Federal. The provisions of section 3 of article 1 of the state Constitution, that "the people inhabiting the state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public lands shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States," do not prevent the state courts from exercising jurisdiction over controversies as to the possession and ownership of lands within the limits of Indian tribes, after the land has been allotted, although it may be necessary for the state court to construe acts of Congress, treaties with the Indian tribe, and departmental leases and conveyances, and said courts have jurisdiction over a controversy as to possession between the owner of said land and a sublessee of the land for oil and gas mining purposes, although the oil and gas did not pass by the allotment, and though the original lease required that royalties be paid to the tribe.

(Syllabus by Rosser, C.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by Henry Kohlmeyer against the Wolverine Oil Company, a corporation, and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Grinstead, Mason & Scott,* for plaintiff in error.

Opinion by ROSSER, C. This is a suit by Henry Kohlmeyer against the Wolverine Oil Company and Ed Pearce and Fred Reed, its superintendent and foreman, respectively, to enjoin the company and its employees from drilling for oil and gas on plaintiff's land. The petition alleges that plaintiff is not a member of any Indian tribe; that he bought the lands, concerning which the controversy has arisen, from the allottee, and

that he is now the sole owner thereof; that a large portion of it is in cultivation; that defendants have thrown down the fence inclosing the cultivated land, and have declared their intention of drilling thereon; that plaintiff has not given his consent in writing or otherwise to the defendants, or any one else, to enter on the land for the purpose of conducting oil and gas mining; that plaintiff is in actual possession of the land, using it for agricultural purposes; that to use the land for oil and gas mining will destroy it for agricultural purposes. The defendant, answering, says that it is a sublessee holding under the Foster lease; that it is in possession of the land for the purpose of drilling for oil; that it has not interfered with plaintiff's possession further than absolutely necessary in order to drill; that the Osage tribe are the absolute owners of one-eighth of all the oil on said premises, and that, if defendant is not permitted to drill, the tribe will be deprived of the minerals under the land; that only a small portion of the land on which defendant desired to drill was in cultivation at the time defendant located the points at which it wished to drill, but that immediately after it made its location plaintiff began clearing the land; and that plaintiff acted in bad faith in clearing the land after defendant had made the locations. Upon examination of the pleadings, the court dismissed the case for want of jurisdiction, giving as a reason for the want of jurisdiction that the action involved the determination of unallotted Indian rights, jurisdiction over which is exclusively reserved to the United States. This appeal is from the judgment dismissing the case.

Defendant has filed no brief in the case, and there is nothing in the record showing the particular reason why the court considered itself without jurisdiction. The court erred in holding that it was without jurisdiction.

The petition alleged that the land had been allotted and that plaintiff had purchased from the allottee and was the owner. The defendant was the sublessee under the Foster lease. There was no contention that his lease was not good. In other words,

there was nothing in the case that interfered with the right of the government to dispose of the property of the Indian tribe. The question involved was merely the construction of certain acts of Congress and certain provisions of the lease. State courts construe acts of Congress and patents from the government and adjudicate the rights of parties thereunder:

"A cause cannot be removed from a state court simply because, in the progress of the litigation, it may become necessary to give a construction to the constitution or laws of the United States." (*Gold Washing & Water Co. v. Keyes,*.96 U. S. 199, 24 L. Ed. 656.)

After the government and the tribe have made the conveyance, and where there is no effort in the state court to attack the conveyance as made, or the lease, as in this case, the state courts have jurisdiction. See *Bird v. Winyer,* 24 Wash. 269, 64 Pac. 178; *Wright v. Marsh,* 2 G. Greene (Iowa) 94.

In holding that the court was without jurisdiction, the trial judge must have acted under the belief that section 3 of article 1 of the Constitution, which is the third paragraph of section 3 of the Enabling Act, prevents the state court from exercising jurisdiction in this case. So much of that section as is material in this case is as follows:

"The people inhabiting the state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any such public lands shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States."

This section, however, was written for the purpose of securing to the United States control of Indian lands not disposed of. It has no application after the land has passed from the Indian tribe and the government and has become vested in private owners. Where it has been disposed of and become vested in private owners, the state court has the same jurisdiction over the land as over any other land in the state, subject

to appeal from the state Supreme Court, where a federal question, such as the construction of an act of Congress, is involved. It would be a strange thing if the state must close the door of her courts to two of her citizens, neither of whom are Indians, merely because the title under which they claim must be traced through acts of Congress and Indian treaties.

The judgment of the lower court dismissing the case should be reversed, and the cause remanded, with instructions to the district court of Osage county to proceed with the trial of the case.

By the Court: It is so ordered.